# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

vs.                                                        **CV 01-1085 LH/LCS**
                                                           **CR No. 98-343 LH**

JOHN VINCENT MACKOVICH,

        Defendant/Petitioner.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

1.      This matter is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. §2255, filed September 19, 2001. (*Doc. 1*). Mackovich, currently incarcerated and proceeding *pro se*, attacks the correctness of the proceeding in the case styled *United States of America v. John Vincent Mackovich*, numbered CR 98-343 LH, United States District Court for the District of New Mexico. I have reviewed the entire record and all of the transcripts of the criminal proceedings. Because it is possible to resolve all of the issues on the pleadings, I find that an evidentiary hearing is not necessary. *E. g., United States v. Kennedy*, 225 F. 3d 1187, 1193 (10th Cir. 2000) (under 28 U. S. C. §2255, the district court is required to conduct an evidentiary hearing [u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.) (internal quotations and citations omitted); *see also*

1

Rule 8(a), Rules Governing Habeas Corpus Under Section 2255. Having considered the arguments, pleadings, relevant law, and being otherwise fully informed, I find the motion is not well-taken and recommend that it be DENIED.

2.      On May 7, 1998, Mackovich was indicted on one count of armed bank robbery, in violation of 18 U.S.C. §§2113(a) and (d), and one count of using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §924(c). The district court conducted a competency hearing and heard testimony from a court-appointed psychiatrist and from the Defendant. The district court ultimately found Mackovich competent to stand trial. Before trial, Mackovich filed two *pro se* motions, one of which was a motion to represent himself at trial. Mackovich's attorney also filed a Motion for Leave to Withdrawal [sic] as Counsel and a Motion to Vacate and Continue Trial. The district court denied all of the motions and stressed that the Defendant's *pro se* motions were untimely as a matter of law and not even properly before the court.  On December 2, 1998, following a three day trial, a jury convicted Mackovich of both counts in the superseding indictment.

3.      Mackovich was sentenced on May 4, 1999. The district court ruled that Mackovich had two prior convictions that qualified as "strikes" under 18 U.S.C. §3559(c) and further ruled that that the instant offense was Mackovich's third strike.  Accordingly, Mackovich  was sentenced to life imprisonment on the bank robbery count and a consecutive five year sentence on the firearm count. Judgment was entered on May 24, 1999.

4.      Mackovich, represented by a federal public defender, filed an appeal on June 1, 1999. He raised the following issues: (1) the district court erred in finding him to be competent; (2) the district court erred in refusing to allow Mackovich to represent

himself; and (3) the district court erred in imposing life imprisonment under the "three strikes" statute, 18 U.S.C. §3559(c). In a published decision, the Court of Appeals rejected each of Mackovich's claims and affirmed his conviction and sentence. *See United States v. Mackovich*, 209 F.3d 1227 (10th Cir. 2000).

5.     On September 19, 2001, the Petitioner filed this Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. §2255. The Petitioner asserted the following arguments for his basis of relief:

(1) Conviction obtained by use of coerced confession by the federal public defender;
(2) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure;
(3) Conviction obtained with use of illegally obtained statements;
(4) Conviction obtained in violation of Double Jeopardy;
(5) Denial of right to represent himself;
(6) Denial of fair trial on basis of prosecutorial misconduct;
(7) Disparity in sentencing;
(8) Insufficiency of evidence;
(9) Ineffective assistance of trial counsel;

6     Due to the complexity of the Petitioner's Motion and the multitudinous claims raised, I will analyze Mackovich's claims in the following sections. First, there are numerous claims which are conceivably procedurally barred, second there are claims that are not barred but were brought on appeal; and third, there are many claims of ineffective assistance of both trial and appellate counsel.

## I. <u>Procedurally Defaulted Claims</u>

7.     In his § 2255 Motion, Mackovich makes the following claims: (1) his conviction was obtained by use of a coerced confession by the federal public defender; (2) his conviction was obtained with use of illegally obtained evidence; (3) his conviction was

obtained with use of illegally obtained statements; (4) conviction was in violation of the Double Jeopardy clause of the Fifth Amendment; (5) denial of fair trial on basis of prosecutorial misconduct; and (6) insufficiency of the evidence.

8.    Mackovich failed to raise all of these claims on direct appeal. Ordinarily, a § 2255 motion is not available to test the legality of matters that should have been addressed on direct appeal. *See United States v. Frady*, 456 U.S. 152 (1982); *see also United States v. Allen*, 16 F. 3d 377, 378 (10th Cir. 1994). A defendant is procedurally barred from presenting any claim in a 2255 motion that he failed to present on direct appeal unless he can demonstrate cause for the procedural default and prejudice suffered thereby, or that the failure to hear the claim would result in a fundamental miscarriage of justice. *See United States v. Wright*, 43 F. 3d 491, 496 (10th Cir.1994). However, a defendant may establish cause for his procedural default by showing he received ineffective assistance of counsel. *See United States v. Cook*, 45 F. 3d 388, 392 (10th Cir.1995). Mackovich articulates some of these arguments in terms of ineffective assistance of counsel.[1] Under these circumstances, these claims are not procedurally defaulted.[2] As for the two remaining claims, coerced confession from the federal public defender[3] and conviction in violation of Double Jeopardy[4], Mackovich

---

[1]    (1) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure; (2) Conviction obtained with use of illegally obtained statements; (3) Denial of fair trial on basis of prosecutorial misconduct; and (4) Insufficiency of evidence.

[2]    These claims that are not procedurally defaulted because they are couched in terms of ineffective assistance of trial counsel and will be considered and analyzed subsequently.

[3]    Even if this claim was properly before this Court, it must fail for at least two reasons: (1) the "so-called" confession was never admitted into trial; and (2) the confession was elicited by the defendant's own attorney.

fails to demonstrate the prejudiced suffered or that the failure to hear these claims resulted in a fundamental miscarriage of justice. *See Wright*, 43 F.3d at 496. Thus these two claims are procedurally defaulted and are not properly before this Court.

## II. Ineffective Assistance of Trial Counsel

9.      After reading Mr. Mackovich's Motion and Memorandum Brief in the most liberal fashion, the following arguments have been extracted with respect to ineffective assistance of trial counsel: (1) counsel failed to call defense witness Wendy Basse; (2) counsel failed to investigate or present an alibi or any defense as to *mens rea*; (3) counsel failed to object to prosecutorial misconduct; (4) counsel refused to raise the issue of an unconstitutional arrest, including false arrest and excessive force; and (5) counsel failed to file motions to suppress.

10.      In order to establish ineffective assistance of counsel, the Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A habeas corpus Petitioner has the burden of establishing both elements of the *Strickland* standard. *See id*. at 694. Petitioner bears the burden of proving both the deficiency and the prejudice prong of the *Strickland* standard. *See Kimmelman v. Morrison*, 477 U.S.

---

[4]      Mackovich alleges that the double jeopardy clause of the Fifth Amendment prohibits him from being punished both for armed robbery and carrying a firearm during and in relation to a crime of violence. The Tenth Circuit has already considered and rejected this particular Double Jeopardy claim. *See United States v. Overstreet,* 40 F.3d 1090, 1093-95 (10th Cir. 1994) (imposing consecutive punishment for car jacking does not violate double jeopardy).

365, 381 (1986).

11.     To demonstrate constitutional deficiency, Mackovich must show that "counsel's performance was completely unreasonable, not simply ill-advised in hindsight." *See Fowler v. Ward*, 200 F.3d 1302, 1310 (10th Cir. 2000) (citing *Hoxsie v. Kerby*, 108 F.3d, 1239, 1246 (10th Cir. 1997)). Similarly, to show unconstitutional prejudice, Mackovich must demonstrate that but for counsel's errors, there is a reasonable probability that the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 694. An ineffective assistance claim may be resolved on either performance or prejudice grounds alone. *See Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995). The Petitioner must therefore demonstrate to the court why his counsel's actions fell below an objective standard of reasonableness and that because of his counsel's actions, the proceeding was prejudiced. *See Strickland*, 466 U.S. at 688.

A. *Failure to call Wendy Basse*

12.     Mackovich argues that his trial counsel was ineffective for refusing to call his girlfriend and/or roommate, Wendy Basse, as a witness. Mackovich intimates within his Memorandum Brief in support of his Motion that Ms. Basse would have testified to his whereabouts at the time of the robbery. *See* Brief at 6. After carefully reading Mr. Mackovich's Motion and supporting Memorandum, he fails to show the specific content of Ms. Basse's testimony. He does not say how such testimony would have changed the outcome of the proceeding. *See Strickland* 466 U.S. at 694 (to demonstrate prejudice, defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). More

importantly, following the prosecution of Mr. Mackovich, the government prosecuted Ms. Basse for aiding and abetting a felon in possession of a firearm and misprision of a felon. *See* Ex. 9B. Ms. Basse pleaded guilty and cooperated with the government. *See* Ex. 9C. In a debriefing statement, Ms. Basse admitted that she was aware of Mackovich robbing five different banks. *Id.* She set forth in detail the manner in which he performed the robberies and specifically mentioned that he carried a gun on each occasion. *See* Ex. 9A.

13.     Given Petitioner's failure to show the significance of Ms. Basse's testimony in addition to the fact she connected Mackovich to multiple robberies, the Court finds that Mackovich's trial counsel made an intelligent and tactical decision in excluding her from his witness list. *See Minner v. Kerby*, 30 F.3d 1311, 1317 (10th Cir. 1994) (the decision of what witnesses to call is a tactical one within trial counsel's discretion). Deference should be given to counsel's tactical judgments. *See Osborne v. Shillinger*, 861 F.2d 612, 625 (10th Cir. 1988); *see also United States v. Ortiz-Oliveras*, 717 F.2d 1, 3 (1st Cir.1983) ("[t]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance of counsel.") Given the content of Ms. Basse's statement to the police, defense counsel's choice not to record or memorialize her statement was correct out of concern that her testimony would have hindered Mackovich's defense.

### B. *Failure to Investigate, to Provide an Alibi Witness, and to Assert Defense as to Mens Rea*

14.     Mackovich argues that his trial counsel was ineffective in failing to investigate a potential alibi or any defense as to *mens rea*. He states within his Memorandum Brief that "counsel neglected to present any theory or scenerio [sic] to the jury which would give their

minds something to work with, that would refute or run contrary to the web of lies that the ex-military officer/Prosecutor had given them;" and that "counsel did not conduct any form of investigation, talk to any potential witnesses, or discuss with the Petitioner various defense strategies." *See* Brief at 19 and 20.

15.     As noted above, in order to establish ineffective assistance of counsel, Mackovich must show that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688.  A habeas corpus petitioner has the burden of establishing both elements of *Strickland*. *Id.* 466 U.S. at 694.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690.  Counsel has a duty to make reasonable investigations and decisions which deem particular investigations unnecessary.  *See id.*  A "particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 690-91. When an ineffective assistance claim centers on a failure to investigate and elicit testimony from witnesses, the petitioner must demonstrate, with some precision, the content of the testimony they would have given at trial.  *See Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir.1990).

16.     First, Mackovich fails to demonstrate what additional investigation into this alleged alibi might have revealed.  He fails to even assert who might have been his alibi

witness at the time of the robbery.[5] Second, Mackovich fails to provide any relevant information as to what defense he might have brought, including any *mens rea* defenses. He merely states "counsel failed to investigate the defendant's debriefing statement which were not incriminating and which lacked credibility as to his knowledge of the crime." *See* Brief at 6a-6b. The only statements Mackovich made post arrest were (1) he was thirsty; (2) his blue car had broken down; (3) he had gotten lost; and (d) he should have kicked Treadwell's ass. *See* Trial Tr. at 264-66. The Petitioner provides no cognizable information as to how these statements led to his knowledge, or lack there of, of the crime nor does he provide any information asserting a particular *mens rea* defense.

17.     In addition, Mackovich was charged with two crimes: armed robbery of a bank and carrying a firearm in connection of a felony. Besides the issue of competency, which defense counsel did raise both at trial and on appeal, there are no other available *mens rea* defenses. These two crimes are general intent crimes that require the government to prove he "knowingly" committed the acts. Therefore, the trial was not prejudiced and defense counsel was not ineffective for failing to raise additional defenses.

18.     Third, Mackovich contends his trial counsel failed to provide any theory or "scenario" to the jury to combat the prosecution's case. However, after carefully reading the entire transcript of the trial, it is clear that Mackovich's trial counsel repeatedly argued there

---

[5]     Although he suggests that his girlfriend, Ms. Basse, could have possibly vouched for him at the time of the robbery, I have already assessed that it was trial counsel's well thought out tactical decision not to put her on the stand. *See supra* ¶¶ 12 and 13.

was insufficient evidence to convict Mackovich of the crime and that it could have been some other person. *See* Tr. at 116-17, 134, 173, 176, 245-46, 292, 447-53, 511, 514, 516, and 521.

19.     Finally, the Petitioner contends that his "counsel did not conduct any form of investigation, talk to any potential witnesses, or discuss with the Petitioner various defense strategies." *See* Brief at 20. Once again, Mackovich fails to assert who these potential witnesses are or what possible defenses could have been brought in his behalf. At trial, Mackovich's attorney called one witness. However, after careful consideration of the proceedings, defense counsel cross-examined all of the witnesses to the robbery during the presentation of the government's case. Moreover, it is quite obvious from the trial transcript that Mackovich was uncooperative. It seems he led his attorney to believe he would testify on his own behalf. However, when his counsel tried to call him as a witness, Mackovich refused to take the stand. *See* Trial Tr. at 460-61.[6] The only other witness Mackovich referred to within his Motion or Memorandum Brief is Ms. Basse. However, as I have previously made clear, defense counsel was astute in not placing Ms. Basse on the stand and not doing so was certainly within counsel's tactical discretion. *See supra* ¶¶ 12 and 13.

20.     The Petitioner's complaint is merely one of general disapproval. He fails to provide the Court with any specific information, supported or not, that would indicate any ineffective assistance. As a result, Petitioner has failed to meet his burden of establishing ineffective assistance of counsel. In light of the substantial evidence of Petitioner's guilt, *see supra* ¶ 44, trial counsel's decision not to undertake additional investigation into alleged

---

[6]     During his opening statement, defense counsel stated that Mr. Mackovich would take the stand and would testify as to where he was on the day of the robbery. *See* Trial Tr. at 89.

alibis, potential witnesses, or Machovich's alleged *mens rea* did not fall below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687. When weighed against the substantial evidence against the Petitioner, it is clear that additional investigation on his theoretical alibis, potential witnesses, or purported *mens rea* would not have changed the outcome of the trial. Mackovich also failed to demonstrate the trial was prejudiced. He failed to set forth how additional investigation would have benefitted his case or how the outcome of his trial would have been different. Under the circumstances of this case, trial counsel's decision not to investigate a possible alibi or any other potential witnesses was reasonable.

C. *Failure to file Motions to Suppress*

21.      Mackovich contends that he was denied effective assistance of counsel because his attorney failed to move to suppress evidence seized from his home without valid consent and his statements made without the presence of his attorney. Mackovich argues, "agents did not have a warrant to search the defendants [sic] residence. Instead they requested consent from a houseguest who resided in a separate bedroom of the home. She gave consent and the agents went in the private bedroom of the defendant retrieving an empty holster and ammo box. The home was rented solely by the defendant." *See* Motion at 6a. Additionally, Mackovich complains "the arresting officer Treadwell beat the defendant and questioned him as to the location of the money, a gun and to what the defendant was doing out there. While the defendant continually requested an attorney to be present." *See* Motion at 6a. The Petitioner reasons that trial counsel was ineffective in failing to file a motion to suppress with respect to these issues.

22.      With respect to the evidence obtained from Mackovich's home, a primary

issue facing defense counsel in deciding whether to file a motion to suppress evidence is whether the search or seizure violated his client's rights. *See United States v. Soto*, 988 F.2d 1548, 1552 (10th Cir.1993). The evidence obtained from Mackovich's home and admitted into evidence was a holster, an empty box of .45-caliber ammunition, and a box for a .45-caliber handgun. *See* Trial Tr. at 348-51. At trial, Roswell Police Department Detective Clifton Frosch testified that he obtained consent from Mackovich's girlfriend to search the residence she shared with Mackovich. *See* Trial Tr. at 348. Mackovich's trial counsel never moved to suppress this evidence at trial, nor did appellate counsel raise the issue on appeal. Therefore, the question before the Court at this time is whether such a claim, if timely raised, would have been successful.

23.     The consent of a third party to a search of a common premises is valid if the consenting party possesses either actual or apparent authority to consent to the search. *See United States v. Gutierrez-Hermosillo*, 142 F.3d 1225, 1230 (10th Cir.1998) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)). Mackovich contends that the search was unlawful because Ms. Basse did not have the authority to provide consent, especially to his bedroom where the evidence was found. The test of a third party's actual authority is "whether the third party has 'mutual use of the property[,] ... generally ha[s] joint access or control for most purposes[,] ... and [whether] the others have assumed the risk that one of their number might permit the common area to be searched.'" *Gutierrez-Hermosillo*, 142 F.3d at 1230 (citing *United States v. Matlock*, 415 U.S. 164, 171 n. 7 (1974); *see also United States v. Rith*, 164 F.3d 1323, 1329 (10th Cir.1999). In addition, Officers conducting a warrantless search do not violate the Fourth Amendment when they reasonably, although

erroneously, believe that the person who consents to their entry has the authority to consent to this entry. *See Gutierrez-Hermosillo*, 142 F. 3d at 1230 (citing *Rodriguez*, 497 U. S. at 186-88). Since Mackovich does not dispute the fact Ms. Basse resides in the same residence, his argument that the search was unlawful is meritless. Because Ms. Basse lived in the same residence as Mackovich, her consent constitutes either actual or apparent authority. *See Gutierrez-Hermosillo*, 142 F. 3d at 1230. A motion to suppress at trial would have been ineffectual.

24.     With respect to the statements obtained by Mackovich after he was arrested, I find that even if the statements were suppressed, the outcome of the trial would not have been different. The only statements made by Mr. Mackovich were: (1) he was thirsty; (2) his blue car had broken down; (3) he had gotten lost; and (4) he should have kicked Treadwell's "ass." *See* Trial Tr. at 264-66. Sergeant Treadwell, the arresting officer, offered these statements into testimony. *Id*. Sergeant Treadwell testified that Mackovich made these statements after he was read his Miranda warning. *Id*. at 264. Even if these challenged comments were obtained unlawfully, the underlying question before the Court is whether Mackovich could establish that these statements provided actual prejudice in the jury's decision making process. *See Strickland*, 466 U.S. at 688.

25.     In considering the prejudice prong, the court must apply the harmless error standard under *Brecht v. Abrahamson*, 507 U.S. 619, 638-39 (1993) and *Kotteakos v. United States*, 328 U.S. 750, 765- 66 (1946). Accordingly, I must consider whether the challenged comments had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (quotation omitted); *see also Hale*, 227 F.3d 1298, 1324-25 (10th

Cir. 2000); *see also Bryson v. Ward*, 187 F.3d 1193, 1204-06 (10th Cir.1999). One statement appears to be incriminating: his *blue* car had broken down. It seems that this statement would link Mackovich to the blue Camero seen leaving the bank. However, this statement is irrelevant since the government proved at trial that Mackovich was the owner of the blue Camero by having submitted automobile insurance documents into evidence. *See* Trail Tr. at 269-70. None of the remaining statements are considered the "smoking gun" of the government's case either. The content of the statements do not cloak the defendant with guilt. I find that Mackovich's allegations are not sufficient to meet this standard, and that the submission of the challenged comments were harmless error, if in fact they were obtained unlawfully.

### D. *Prosecutorial Misconduct*

26. The Petitioner's next ineffective assistance claim is that his trial counsel "failed to object at trial to very serious instanced [sic] of prosecutorial misconduct." *See* Motion at 6b. After reading the Motion and the supporting Memorandum, Mackovich makes several claims pertaining to prosecutorial misconduct. I will address each claim separately in the following analysis.

### (1) Prosecutor's History in the Military

27. Mackovich claims that his counsel should have objected to the prosecutor's repeated mis-use of his military history as an ex-officer and that such use unfairly influenced the jury. In his closing argument, the government's attorney made the following remark:

> Now, let me begin by writing out very briefly in summary fashion the elements of the two crimes that he's charged with. You'll have to forgive me, I'm an ex-Air Force officer, and I like to write things down. On this side I'm going

14

to put 'bank robbery,' and on this side I'll put, 'use or carry of a gun." All right. *See* Trial Tr. at 485.

This was the only reference made by the prosecutor about his past military career. After reading the entirety of the government's closing argument, I find that, without a doubt, this comment did not prejudice the outcome of the trial. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (stating that "the relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process"); *see also Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999). I find that the likelihood that this comment affected the outcome of the jury's deliberations was remote at best.

### (2) Presence of Agent during Trial

28.    One of the claims listed within Mackovich's Motion asserts his trial counsel failed to object when the prosecution called an agent to testify who had been present during the trial. Mackovich fails to identify this agent or the content of his/her testimony. Although the Court should interpret a Petitioner's motion liberally, it is quite difficult to do so when there is little information concerning a particular claim. The only information provided by the Petitioner concerning this claim is that "counsel failed to object at trial to very serious instanced of prosecutorial misconduct. As comments made by the prosecutor having an agent present during the trial to assist and then using this same agent as a witness to testify. See 2255 Supplement page #4 line 16 & page 5 line 17." *See* Motion at 6b. Although Mackovich cites to his Memorandum in support, the pages he refers to do not expand on this issue.

29.    After reading the trial transcript, I can only surmise that the agent referred to

by Mackovich is Agent Maria Johnson. Agent Johnson, a special agent for the FBI, was the lead agent over the instant robbery investigation. *See* Trial Tr. at 420-21. Agent Johnson was present during the majority of the trial and was the last witness called by the government. She specifically testified as to statements made by Mackovich after his arrest. *See* Trial Tr. at 443. She stated that before Mackovich was informed he was charged with armed robbery, he said he "didn't rob the bank." and they didn't "have a gun or the money." *Id.*[7] Because Agent Johnson was the agent in charge of the federal investigation, her presence at trial and her testimony was appropriate. *See* FED. R. EVID. 615. Therefore, since Agent Johnson's presence at the trial and her ultimate testimony was allowed under the Rules of Evidence, and Mackovich does not provide any further argument, I find this claim has no merit.

### (3) Prosecutor's Statements during Closing Arguments

30.     First, Mackovich argues that the prosecutor improperly vouched for the government's witnesses by stating "if you think the FBI and 26 witnesses are lying than [sic] walk the Defendant." *See* Brief at 14. In the prosecutor's closing argument, he stated:

> If you think, ladies and gentlemen, for one second that any police officer walked in here and deliberately lied to you, then you acquit him. You acquit the defendant. If you think for one second that Mr. Buscaglia or Agent Johnson or I coached a witness to say something the witness didn't want to do, suggested an answer, shaped testimony, then you acquit the defendant. Ladies and gentlemen, we are authorized to strike fair blows, not foul blows. If you think for a second that we've stricken one foul blow against the defendant, acquit him. *See* Trial Tr. at 525-26.

The presentation of evidence by the prosecutor "is impermissible vouching only if the jury

---

[7]     Neither defense counsel during trial nor Mackovich in his §2255 Motion argues that these statements were unlawfully obtained.

could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir.1990).

31.     At no point does the prosecutor indicate personal belief in the credibility of any government witness. Moreover, the aforementioned remarks made by the prosecutor were made in direct response to comments made by defense counsel during his closing arguments. *See* Trial Tr. at 509. Specifically, defense counsel alluded that promotions and certain jobs received by police officers were based on the number of arrests and resulting convictions made on their behalf. *Id.* Also defense counsel hinted that the bank tellers were "fed" information in order to testify. *See* Trail Tr. at 512. A prosecutor is accorded considerable latitude in responding to defense counsel's remarks, particularly when the remarks "impugned the integrity and honesty of the Federal officers and agencies." *United States v. Shelton*, 736 F.2d 1397, 1406 (10th Cir. 1984); *see also United States v. Villa-Chaparro*, 115 F.3d 797, 803-04 (10th Cir. 1997) (considerable latitude given to prosecutor in closing argument where defense counsel "invites" argument). Therefore, I find that defense counsel was not ineffective by not objecting the prosecution's closing argument.

32.     Second, Mackovich argues that his trial counsel erred by not objecting to the prosecutor's disparaging remarks. Specifically, the prosecutor stated during his closing argument that the defendant "ran from the cops, he hid from the cops, he fought the cops, he lied to the cops, and later that night he tried to escape from the cops . . . Those are actions of a desperate man, of a coward who knows that the gig is up." *See* Trial Tr. at 498-99. The

mere fact that the prosecutor used the word, "coward" does not *per se* "infect the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. The prosecutor's comments during his closing argument were harmless particularly given the overwhelming evidence of Mackovich's guilt. *See infra* ¶ 44.

33.     Lastly, Mackovich argues that his trial counsel should have "objected to the fact that the prosecutor consistently and repeatedly misrepresented the importance of finger prints [sic] and hair samples, which did not belong to the Petitioner and which would seem to indicate the Petitioner could not possibly be the person who perpetrated the criminal act, in question." *See* Brief at 12. The prosecutor stated in his closing argument that "[t]he only prints of value that were recovered from any piece of physical evidence in this case came from one item, the wig box." *See* Trial Tr. at 502. He also stated that "just because prints of value weren't recovered from all the rest of the physical evidence . . . .doesn't mean it wasn't touched." *Id*. In rebuttal, defense counsel argued the importance of absent fingerprints and how the fingerprints found were not Mr. Mackovich's. *See* Trial Tr. at 520-21.

34.     Placed within the context of the entire trial, the prosecutor's comments were not objectionable. A prosecutor may argue the facts in evidence and make reasonable inferences from those facts. *See* I ABA Standards for Criminal Justice 3.5-8(a) (2nd ed. 1980). "Methods designed to arouse prejudice, passion, and use of invective are not proper argument." *United States v. Coppola*, 479 F.2d 1153, 1163 (10th Cir.1973). Nonetheless, I do not believe these isolated comments affected the outcome of the trial. Although defense counsel did not object to these comments, he argued, in his own closing argument, the importance of absent fingerprints. Therefore, I find that defense counsel's representation was

18

appropriate by not objecting to the prosecutor's statements and instead responding to the comments within his own closing argument.

### E. *Counsel Refused to Raise Constitutional Issues*

35.     The Petitioner argues his trial counsel failed to raise issues concerning the violation of the Petitioner's Constitutional rights. Mackovich asserts his "attorney refused to argue defendant's right to be free from false arrest, and malicious prosecution, when defendant proved the excessive force and torture used by arresting agents at the time of arrest and while interrogating defendant and denying him the right to have counsel present." *See* Motion at 6b. After reading the Petitioner's Motion and Supplemental Brief, there appears to be three different complaints made in this one argument: counsel failed to raise issues of (1) excessive force; (2) false arrest; and (3) right to counsel.

36.     With respect to the issue of excessive force, it seems Mackovich contends Sergeant Treadwell beat Mackovich during and after his arrest. *See* Motion at 6a. Sergeant Treadwell testified at trial that Mackovich initially refused to surrender at his commands. *See* Trial Tr. at 263. When Mackovich rose to his feet, Sergeant Treadwell pushed him down to the ground and struck him with his fist in order to handcuff him. *Id.*

37.     In addition to Sergeant Treadwell's testimony, the owner of the property where Mackovich was arrested testified he did not see Sergeant Treadwell "beating up on him," but that when "he went to put the cuffs on that guy he was apprehending tried to roll over and was trying to fight him. He was slinging his arms and trying to fight the officer." *See* Trial Tr. at 247.

38.     Primarily, Mackovich fails to provide any additional information other than

the blanket statement "Petitioner was beaten and tortured by police." *See* Brief at 19. There is nothing in the Petitioner's pleadings, not even factual allegations, to support this accusation. He fails to provide the Court with an explanation of the surrounding circumstances, such as who hit him, where he was hit, what injuries he suffered, etc. Moreover, the fact that Sergeant Treadwell allegedly used excessive force is irrelevant to these proceedings.[8]

39.     If the Petitioner is arguing that excessive force was used to elicit an involuntary statement, this argument must also fail. Mackovich's statement, that his car was blue, was the only semi-incriminating statement admitted at the trial. That statement was deemed immaterial since the government already proved the car was owned by Mackovich. *See supra* ¶ 25. Therefore, the fact excessive force was allegedly used to obtained that statement is irrelevant.

40.     Mackovich also claims his counsel failed to argue false arrest and malicious prosecution claims. However, in light of the evidence presented to the jury and the fact that the jury convicted the defendant on both counts, such a motion would have been considered meritless.[9] Mackovich fails once again to prove either prong of the *Strickland* ineffective assistance of counsel test.

41.     Lastly, Mackovich claims he was denied his request for an attorney while

---

[8]     Raising an excessive force claim is inappropriate for this habeas corpus proceeding. Such a claim should be brought in a civil complaint pursuant to 42 U.S.C.§1983.

[9]     As stated in ¶ 39, if Mackovich raises these claims in order to question the admission of an involuntary statement, then these claims are still without merit since the only incriminating statement admitted into evidence was proven on other grounds.

being interrogated about the robbery. Once Mackovich was handcuffed, Sergeant Treadwell read him his *Miranda* rights. *Id*. Sergeant Treadwell testified that the only question he asked the Petitioner was his name. After he was read his *Miranda* rights, Mackovich made the following statements to Sergeant Treadwell: he stated that he was thirsty, his car broke down and he was lost, that his car was blue, that he was headed for Pine Lodge Road and that he should have or could have kicked Sergeant Treadwell's "ass." *See* Trial Tr. at 264-65. It is not clear in the record when Mackovich obtained counsel. Nevertheless, the submission of the challenged comments was harmless error, if in fact he had asked for an attorney and they were obtained from him without the attorney present. *See supra* ¶¶ 24 and 25.

### III. <u>Ineffective Assistance of Appellate Counsel</u>

42.     One recurring argument raised within Mackovich's Motion and Memorandum is whether there was sufficient evidence to convict him. Mackovich did not raise this issue on appeal. However, he seems to allege his failure to appeal this issue was caused by ineffectiveness of counsel. When a Petitioner alleges his counsel rendered ineffective assistance by failing to raise an issue on appeal, the Court examines the merits of the omitted issue. *See United States v. Dixon*, 1 F. 3d 1080, 1083 (10th Cir. 1993), *abrogated on other grounds* by *Florida v. White*, 526 U.S. 559 (2000). If the omitted issue is without merit, counsel's failure to raise it "does not constitute constitutionally ineffective assistance of counsel." *Id.* at 1084 n. 5; *see also United States v. Cook*, 45 F. 3d 388, 394 (10th Cir. 1995). Since the following analysis addresses the claim raised by the Petitioner and properly disposes of it on the merits, I find that this ineffective assistance claim is also without merit.

43.     In a sufficiency of the evidence inquiry, a court looks at all the evidence in the light most favorable to the government and draws all reasonable inferences in favor of the verdict to determine if the evidence is substantial enough to establish guilt beyond a reasonable doubt. *See United States v. Johnson*, 42 F. 3d 1312, 1319 (10th Cir. 1994). The evidence must do more than raise a mere suspicion, but it need not conclusively exclude all other reasonable possibilities. *See id.*

44.     The following summary represents the evidence presented at trial in a light most favorable to the government:

> The man who robbed the bank was wearing a wig and dark sunglasses (Trial Tr. at 110, 125 and 147); one witness testified that it looked like the robber carried a gun in the front of his pants (Trial Tr. at 95); witnesses also testified that it looked like the robber was wearing a black earpiece with a cord in his ear (Trial Tr. at 111 and 136); the robber asked for one hundred and fifty dollar bills only (Trial Tr. at 96); one witness testified that she thought the robber was wearing a tan jacket, where another witness testified he thought he was wearing flannel jacket or shirt (Trial Tr. at 115 and 146);

> A man was seen leaving the area in a blue Camero (Trial Tr. at 158); witnesses testified that the man in the Camero started speeding up to 70 to 80 miles per hour and running stop signs going west on Country Club Road (Trial Tr. at 160, 182, and 187); the Camero was eventually found at the end of Country Club Road still warm, with no one present, and locked (Trial Tr. at 202); a $50 bill and a black earpiece were found near the car (Trial Tr. at 206);

> Mr. Mackovich was spotted and apprehended on private property approximately one mile from the where the blue Camero was found (Trial Tr. at 230, 250, and 263); $2,000 was found buried at the sight Mackovich was first spotted (Trial Tr. at 248); Mackovich resisted arrest (Trial Tr. at 263); Sergeant Treadwell, the arresting officer, hit Mr. Mackovich during the apprehension (Trial Tr. at 263); when Mr. Mackovich was taken to the hospital, he was found by a police officer climbing out of the ceiling of the examination room (Trial Tr. at 334); Mr. Mackovich had the keys to the blue Camero on his person (Trial Tr. at 277);

Two $50 bills, a $20 bill, a syringe, a wig, a box for a wig, a magazine for a
.45-caliber handgun, a fake moustache, a pair of dark sunglasses, and the car
registration was found in the car (Trial Tr. at 278-79); $11,340 was found in
a flannel shirt in a pasture near the spot Mackovich was apprehended (Trial
Tr. at 424-25); a total of $13,510 was found near the car and in the pasture
where Mackovich was found; a total of $13,510 was stolen from the Valley
Bank of Commerce in Roswell, New Mexico (Trial Tr. at 440);

Mr. Mackovich's fingerprints were not found on the items in the car (Trial Tr.
at 292); Mr. Mackovich is the owner of the blue Camero (Trial Tr. at 269-
70); a holster, an empty box of .45-caliber ammunition, and a box for a .45-
caliber handgun were found in Mr. Mackovich's residence (Trial Tr. at 348-
52);

Mr. Mackovich was late on his rent (Trial Tr. at 408); one of the witnesses
picked out Mr. Mackovich out of a lineup along with another person (Trial
Tr. at 180).

45.      After examing the specific elements of the crimes[10] as well as the evidence

presented at trial, I find that there was sufficient evidence that Mackovich took $13,410 from

a federally insured bank, Valley Bank of Commerce in Roswell, New Mexico with the use of

intimidation. Mackovich also placed the persons' lives in jeopardy by the use of a dangerous

weapon. Therefore, because I am confident that an insufficiency of the evidence claim would

have been meritless on appeal, Mackovich's appellate counsel was not ineffective for not

raising it.

## IV. Issues Raised on Appeal

46.      On June 1, 1999, Mackovich, with appointed counsel, filed a Notice of Appeal

---

[10]      Count I, armed robbery, pursuant to Title 18 U.S.C. §§2113(a) and 2113(b), makes it a crime for
anyone to take from a person or the presence of someone by force and violence or by intimidation any
money in the possession of a federally insured bank and in the process of doing so to assault any person or
put in jeopardy the life of any person by the use of a dangerous weapon or device. Count II, use of a
firearm, pursuant to Title 18 U.S.C. §924(c)(1), makes it a crime for anyone to use or carry a firearm
during and in relation to a crime of violence.

with the Court of Appeals. *See Cr. Doc.* 93. Mackovich raised the following arguments before the Court: (1) the district court erroneously determined that he was competent to stand trial; (2) the district court erroneously denied his request to fire his attorney and proceed *pro se*; and (3) the district court erroneously rejected his argument that one of his prior convictions did not qualify as a "strike" under 18 U.S.C. §3559. *See* Appellate Brief at 2. In Mackovich's §2255 Motion to Vacate, Set Aside, or Correct Sentence, he raised two issues that were brought on appeal: his right to appear *pro se* and disparity in sentencing under 18 U.S.C. §3559.

47.    Absent an intervening change in the law, issues disposed of on direct appeal are not subject to consideration in a § 2255 collateral attack. *See United States v. Prichard*, 875 F. 2d 789, 791 (10th Cir. 1989); *see also United States v. Nolan*, 571 F. 2d 528, 530 (10th Cir. 1978). Because these two issues were resolved on direct appeal, they are not subject to review herein. *See United States v. Warner*, 23 F. 3d 287, 291 (10th Cir. 1994) (issues considered and addressed on direct appeal may not be raised on collateral review under §2255); *see also United States v. Cook*, 997 F. 2d 1312, 1318 n. 6 (10th Cir. 1993) (issues addressed on direct appeal not cognizable under § 2255). Because Mackovich does not claim there has been an intervening change in the law, these two issues should be dismissed because they were raised and affirmed on direct review.

## RECOMMENDED DISPOSITION

I recommend denying the Petitioner's Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, filed September 19, 2001 (*Doc. 1*) and dismissing this action with prejudice. Timely objections to the foregoing

may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is served

with a copy of these proposed findings and recommendations that party may, pursuant to

§636(b)(1)(C), file written objections to such proposed findings and recommendations with

the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM

87102.  A party must file any objections within the ten day period allowed if that party wants

to have appellate review of the proposed findings and recommendations.  If no objections are

filed, no appellate review will be allowed.


**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**